```
                  UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF VIRGINIA


                                    :
     BADAR KHAN SURI,               :
                                    :
                                    :
            Petitioner,             :   Civil Action
                                    :   No. 1:25-cv-00480-PTG-WBP
            v.                      :
                                    :
     DONALD TRUMP,                  :   May 14, 2025
                                    :   10:04 a.m.
            Respondent.             :
                                    :
                                    :
                                    :
     ............................   :
```

                **TRANSCRIPT OF BOND HEARING PROCEEDINGS**
         **BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,**
              **UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

  For the Petitioner:          **Sophia Leticia Gregg, Trial**
                               **Attorney**
                               American Civil Liberties Union of
                               Virginia
                               P.O. Box 26464
                               Richmond, VA 23261
                               804-774-8242
                               Email: Sgregg@acluva.org

                               **Eden Brooke Heilman, Trial**
                               **Attorney**
                               ACLU of Virginia
                               701 E. Franklin Street
                               Suite 1412
                               Richmond, VA 23219
                               (804) 523-2152
                               Fax: (804) 649-2733
                               Email: Eheilman@acluva.org

APPEARANCES:  (Cont.)

For the Petitioner:                 **Astha S. Pokharel, Trial Attorney**
                                    Center for Constitutional Rights
                                    666 Broadway
                                    7th Flloor
                                    New York, NY 10012
                                    212-614-6464
                                    Email:
                                    Asharmapokharel@ccrjustice.org

                                    **Hassan Minhaj Ahmad, Trial
                                    Attorney**
                                    The HMA Law Firm PLLC
                                    6 Pidgeon Hill Drive
                                    Ste 330
                                    Sterling, VA 20165
                                    703-659-0632
                                    Fax: 703-997-8556
                                    Email: Hma@hmalegal.com

                                    **Geri Greenspan, Trial Attorney**
                                    ACLU of Virginia
                                    P.O. Box 26464
                                    Richmond, VA 23261
                                    804-491-8584
                                    Email: Ggreenspan@acluva.org

                                    **Nermeen Saba Arastu, Trial
                                    Attorney**
                                    Main Street legal, Inc.
                                    CUNY School of Law
                                    2 Court Square
                                    Long Island, NY 11101
                                    202-246-0124
                                    Email: Nermeen.arastu@law.cuny.edu

For Respondent:                     **David J. Byerley, Assistant United
                                    States Attorney**
                                    Department of Justice
                                    P.O. Box 868 Ben Franklin Station
                                    Washington, DC 20044
                                    202-532-4523
                                    Email: David.byerley@usdoj.gov

```
APPEARANCES:  (Cont.)

For Respondent:              Elizabeth Anne Spavins, Assistant
                             United States Attorney
                             United States Attorney's Office
                             (Alexandria)
                             2100 Jamieson Avenue
                             Alexandria, VA 22314
                             703-299-3785
                             Email: Lizzie.spavins@usdoj.gov

                             Tom Benjamin Scott-Sharoni
                             DOJ-CIV, Assistant U.S. Attorney
                             Office of Immigration Litigation
                             P.O. Box 868 Ben Franklin Station
                             Washington, DC 20044
                             202-538-3554
                             Email:
                             Tom.scott-sharoni2@usdoj.gov


Court Reporter:              Scott L. Wallace, RDR, RMR, CRR
                             Official Court Reporter
                             United States District Court
                             401 Courthouse Square
                             Alexandria, VA 22314-5798
                             Cell: 443-584-6558
                             Email: Scottwallace.edva@gmail.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.
```

<u>**MORNING SESSION, MAY 14, 2025**</u>

1

2    (10:04 a.m.)

3        THE COURTROOM CLERK:  The Court calls *Badar Khan Suri*

4    *versus Donald Trump*, et al., Case Number 1:25-cv-480.

5        May I have appearances, please, first for the Petitioner?

6        MS. GREGG:  Good morning, Your Honor.  Sophia Gregg from

7    the ACLU of Virginia on behalf of Petitioner.  I'm here with Eden

8    Heilman, Astha Sharma Pokharel, Hassan Ahmad, Naureen Arastu,

9    Geri Greenspan, Vishal Agraharkar, and Celine Zhu.

10        THE COURT:  Good morning to all of you.

11        MS. SPAVINS:  Good morning, Your Honor.  Elizabeth

12    Spavins, Assistant United States Attorney.  With me at counsel's

13    table is my colleague, Christian Cooper, and then presenting for

14    the Respondents today will be David Byerley of the Office of

15    Immigration Litigation at Main Justice, and next to him is Tom

16    Scott-Sharoni, also from OIL.  Thank you.

17        THE COURT:  Good morning to all of you.  So, we are on

18    today on Petitioner's pending motions, the motion for return, as

19    well as the motion for bail.

20        MS. GREGG:  That's correct, Your Honor.

21        THE COURT:  So I'll hear from you first.

22        MS. GREGG:  Yes, Your Honor.  If there's no preliminary

23    matters, we'll start with our motion for bail.

24        We're here today because Dr. Khan Suri is being unlawfully

25    detained for his wife -- his and his wife's lawful expression in

1    support of Palestinian rights and his ties through their marriage

2    to her father.

3         About two months ago, after celebrating Ramadan with his

4    Georgetown community, Dr. Khan Suri came home to armed masked men

5    who handcuffed him and drove him away from his wife, children,

6    and the life he had.  He is now over a thousand miles away from

7    his home, the people he cherishes most, his lawyers, and this

8    court, packed into an overcrowded detention center and subjected

9    to the most severe restrictions usually reserved for people

10    convicted of violent crimes awaiting deportation.

11         The impact of the unlawful actions on Dr. Khan Suri and on

12    the millions of lawful residents, students, professors, and visa

13    holders of all kinds is hard to overstate.  Their speech isn't

14    just chilled.  They are afraid.  They are afraid to exercise

15    their core constitutional rights to write an op-ed, to post on

16    social media, and to dare to criticize the government.

17         This fear is profound.  And what is shocking is that the

18    government doesn't deny it.  The government announced it would do

19    this in advance, and they have doubled down at every opportunity,

20    and they've had ample opportunity to respond to Dr. Khan Suri's

21    claims in this case before this hearing.

22         In response that he is being imprisoned and retaliated

23    against for speech, the government says nothing.  In response to

24    the claim that the government targeted Dr. Khan Suri because of

25    his wife's speech, her Palestinian origin, or family ties, the

1    government says nothing.

2         In response to the claim that the government targeted

3    Dr. Khan Suri because of his wife -- I'm sorry.  The government

4    does not claim that Dr. Khan Suri was imprisoned due to any

5    illegal conduct or for any other constitutionally sound basis.

6         We're asking this Court to release Dr. Khan Suri pending

7    his habeas petition, after which this Court can fully examine the

8    constitutional violations of the government's actions.

9         THE COURT:  Do we even know the exact statements that are

10   at issue?  Have they identified the alleged statements that he

11   made?

12        MS. GREGG:  The government has not put forth any evidence

13   so far in this case regarding any statements or any other reason

14   for his detention.

15        THE COURT:  Okay.

16        MS. GREGG:  Courts considering bond pending immigration

17   habeas petitions use the *Mapp* -- use the *Mapp v. Reno* standard,

18   which requires a court to evaluate two things:  Whether or not

19   there are substantial claims in the case and whether or not there

20   are extraordinary circumstances.  There are both here.

21        While the government argues that Petitioner must meet a

22   heightened standard in *Eliely*, which requires both a substantial

23   constitutional claim upon which he has a high likelihood of

24   success, and extraordinary circumstances, that standard is for

25   habeas petitioners already tried and convicted by a court of law.

1        Here, Dr. Suri is being detained on unproven civil

2   immigration charges challenging the unconstitutionality of his

3   detention.

4        Release on bail here under the standard articulated in

5   *Mapp* is reasonably similar to pretrial release in a criminal

6   case.

7        Dr. Khan Suri brings several substantial claims, but most

8   predominantly is the claim that he has been detained solely for

9   the content of his speech, which must be afforded the highest

10  protection under the First Amendment.

11       The government doesn't deny this.  The government has

12  targeted him in retaliation for exercising his right to free

13  speech under the First Amendment.  And, again, the government

14  doesn't deny this.

15       That must be a substantial claim.  Likewise, there is no

16  evidence that the government has targeted and detained Dr. Khan

17  Suri except in retaliation for exercising his lawful speech and

18  associations.

19       The evidence submitted by Petitioner, namely the

20  government's own statements, supports the fact that the

21  government's objectives in detaining Dr. Khan Suri is punitive in

22  purpose and violates the due process.

23       In considering exceptional circumstances, the

24  courts consider what *Mapp* calls unusual cases.  Except for the

25  handful of current cases that we've brought to the attention of

1    the Court and the Court is aware, in nearly identical

2    circumstances there have been no cases in which the government

3    has used this particular provision to detain someone for lawful

4    speech.

5         That is exceptional.  What is also exceptional is the fact

6    that there is no evidence that Dr. Khan Suri is a danger or a

7    flight risk.  The government was given ample opportunity by this

8    Court in advance of this hearing to present any evidence in

9    opposition to this motion for release, and it provided none.

10        Dr. Khan Suri, however, has demonstrated through an

11   abundance of letters of support from people who know him that he

12   is a kind, caring friend and colleague who leads with a

13   commitment to peace.

14        He's supplemented with even more letters that pour in

15   every day from people of the Georgetown community and people who

16   have known him --

17        THE COURT:  I've read them all.

18        MS. GREGG:  Yes.  If released, he would return to his home

19   in Roslyn, Virginia where he lives with his wife and children.

20        If he's able to, his Georgetown dean and director fully

21   support Dr. Khan Suri's return to work and teaching.

22        The director of the Alleywood Center is here today in

23   support of Dr. Khan Suri's release as well, as are many members

24   of his community.

25        Finally, release is necessary to make the habeas remedy

1    effective because Dr. Khan Suri's attention necessarily

2    constitutes a continued infringement on his First Amendment and

3    due process rights.

4          An infringement on those rights may be justified if the

5    government had presented a legitimate case, but it has not done

6    so.

7          In the meantime, with every passing day, his detention

8    chills the speech of millions and millions of noncitizens who may

9    now not exercise their First Amendment rights for fear of being

10   whisked away to a detention center thousands of meals away from

11   their home.

12         For these reasons and the many other reasons articulated

13   in our motions and supplemental briefing, we ask this Court to

14   release Dr. Khan Suri so that his habeas remedy can be effective.

15         THE COURT:  One issue that they raised in their

16   supplemental, and I don't know if it's necessary for me to reach

17   it in order to rule today, is with regard to your void for

18   vagueness challenge.  Do you have any authority where a void for

19   vagueness challenge has been made as to a policy or regulation?

20         MS. GREGG:  Well, Your Honor, the -- I think the cases

21   that, first, that the government cited don't necessarily say that

22   it doesn't apply to a policy, per se, but here the issue is that

23   there is not just the law that he's being charged under that is

24   void for vagueness, but it's implementation through the executive

25   orders themselves.  That, as a whole, would -- are void because

1   the void of vagueness standard basically requires that due

2   process make the policy or the law clearly defined.

3        And if it doesn't provide the kind of notice that will

4   enable a person or people to understand what the conduct

5   prohibits, it would be -- or if it would authorize or even

6   encourage arbitrary discrimination or enforcement, as it has done

7   here, it would -- it would not satisfy the void for vagueness

8   standards that are articulated in the cases.

9        We don't have -- even if the Court is not inclined to

10  consider the void for vagueness argument or claims in this case

11  as being a substantial claim, there are many substantial claims

12  in this case that would be sufficient for the standard under

13  *Mapp*.  It doesn't say that all the claims must be substantial so

14  much that a substantial claim would be sufficient.

15       THE COURT:  Okay.  So it's your position that, either

16  under your First Amendment claim or under your Fifth Amendment

17  claim, either of those would be sufficient?

18       MS. GREGG:  Correct, Your Honor.

19       THE COURT:  Thank you.

20       MR. BYERLEY:  Good morning, Your Honor.

21       THE COURT:  Good morning.

22       MR. BYERLEY:  As the Court's opinions have shown, ample

23  attention has been paid to the brief, so I'm not going to repeat

24  a lot of what's been said in the brief.

25       THE COURT:  Thank you.

1      MR. BYERLEY:  But, briefly, the Court should deny the

2 pending motions because the standards set by the *United States*

3 *verus Eliely*, which is the Fourth Circuit's, granted it's

4 unpublished, but it's the Fourth Circuit's equivalence of whether

5 habeas release pending a determination on an ultimate habeas

6 petition should be granted, is pretty high.  It requires

7 substantial constitutional claims on which he has a high

8 probability of success.

9      THE COURT:  Haven't they created sustained claims, though?

10     MR. BYERLEY:  Your Honor, the Government does not believe

11 that they have because of many of the jurisdictional bars that we

12 talked about in our briefing, including 1252(a)(5) and (g).

13 Those jurisdictional issues, even maybe not, perhaps, directly at

14 issue, even in the context of determining whether *Eliely* release

15 is appropriate, but it does present an obstacle to their claims

16 on the merits.  And then furthermore --

17     THE COURT:  How so?

18     MR. BYERLEY:  So, what Mr. Suri is challenging in his

19 petition is the decision to institute removal proceedings against

20 him.

21     THE COURT:  That's not what he's challenged.

22     MR. BYERLEY:  Yes, Your Honor.

23     THE COURT:  He's challenged specifically his detention and

24 his transfer.  I agree, like, there was a shift from the original

25 petition and what we have clearly stated in the amended petition,

1    and they're clear.  It's very focused.  It's only -- the removal

2    proceedings can continue.  Those are separate.  But what they're

3    speaking to now, what they are challenging and the prayer for

4    relief that they are seeking directly addresses detention,

5    detention/transfer.

6         MR. BYERLEY:  Yes, Your Honor.  The government agrees that

7    this petition challenges detention, but the decision regarding

8    detention is inextricably bound up in the decision to institute

9    removal proceedings in the first place.

10        So, here we have a case that's somewhat similar to AADC,

11   the anti- -- the anti-Arabic discrimination -- I'm sorry.  It's a

12   mouthful.

13        THE COURT:  That's okay.

14        MR. BYERLEY:  Where they were challenging their removal --

15   the basis of their removal proceedings.  And while some of them

16   may have been detained and some of them may not have been, what

17   we're dealing with here is Mr. Suri's challenging his detention,

18   which is attendant to and directly tied into the decision to

19   institute removal proceedings in the first place.

20        THE COURT:  No court -- I mean -- and this is not on

21   you -- but the government has consistently made the same argument

22   in several jurisdictions at this stage in similar -- similarly

23   situated cases, and no one has adopted that reading.

24        MR. BYERLEY:  So, granted, Your Honor, many of those cases

25   are out of circuit and are not binding.  At least one court did

13

1    find our way.  That was *Taal versus Trump* out of the Northern

2    District of New York earlier this year.  But, granted, courts --

3    there are reasonable grounds to disagree, and we understand that

4    there are decisions disagreeing with those positions.

5         The government disagrees with those decisions and is

6    considering or actively pursuing appellate recourse.  But,

7    granted, yes, I acknowledge that there are other decisions that

8    do not go our way, but what I want to emphasize here is that

9    under *Jennings* and under *AADC*, the government disagrees with

10   those conclusions because what it did --

11        THE COURT:  But *AADC* was -- you know, it only reaches --

12   1252(g) only reaches three discrete actions:  The decision to

13   commence proceedings, adjudicate cases, or execute removal

14   orders.

15        MR. BYERLEY:  Yes, Your Honor, but under 1252(a)(5) and

16   (b)(9), what we also have is review of questions that arise in

17   removal proceedings.  Here, Mr. Suri is challenging the basis of

18   his detention, the basis of the determination under 12.7.

19        THE COURT:  But the detention decision was made prior to

20   the NTA, right, and removal proceedings actually initiating?

21        MR. BYERLEY:  No, Your Honor.  The deportability

22   determination was made prior to the decision to -- the issuance

23   of the NTA, but it forms the basis of the NTA, and so they're

24   inextricably tied up with one another such that (a)(5) and (b)(9)

25   apply, as well as 1252(g).

1    THE COURT:  But even if those were to -- you know, even

2    with those statutes, the courts are clear that they do not

3    preclude challenges to the extent of the government's authority.

4    MR. BYERLEY:  Your Honor, I think you may be referring to

5    *Demore versus Kim*, which held that 1226(e) did not prohibit

6    constitutional challenges to the legislation.  I don't think

7    that --

8    THE COURT:  I'm looking at *Miranda v. Garland*, the Fourth

9    Circuit case.

10    MR. BYERLEY:  I'm sorry?

11    THE COURT:  Miranda --

12    MR. BYERLEY:  Miranda.

13    THE COURT:  -- v. Garden, the Fourth Circuit case.

14    MR. BYERLEY:  Yes, Your Honor.  But the government's

15    position here is that (a)(5) and (b)(9), it applies here because

16    he is challenging his detention, which is inextricably bound up

17    with the 1227(a)(4)(C) determination.

18    And so the government believes that those provisions apply

19    to bar review in this case and that the proper forum for which

20    Dr. Suri to bring his challenges is an immigration court before

21    an immigration judge, and then appeal to the BIA, if necessary,

22    and then appeal to the Fourth Circuit as necessary -- or Fifth

23    Circuit.  I'm sorry.

24    THE COURT:  I understand your argument.  I'm not saying I

25    agree with it, but I understand.

1        MR. BYERLEY:  Yes, Your Honor.

2        THE COURT:  You can move on.

3        MR. BYERLEY:  So, furthermore, under the *Eliely* standard,

4   I think, as Your Honor correctly identified, the void for

5   vagueness challenge suffers from fatal flaws.  First is that the

6   Fourth Circuit says that the void for vagueness doctrine focuses

7   on legislation, not policies or actions.

8        THE COURT:  But I don't even have to reach that.

9        MR. BYERLEY:  Yes, Your Honor, that's correct.  We also

10  agree with that proposition as well.  Because, under the *Eliely*

11  standard, it's only constitutional claims which are at issue on

12  these sorts of motions.

13       Furthermore, the government posits that, to the extent

14  that the Court is considering granting interim release, the Court

15  also has to look at whether the interim release is necessary to

16  render the habeas -- render the habeas remedy effective, to the

17  extent the Court grants the habeas petition in his favor.

18       Over the 17 years since *Eliely* was decided, not a single

19  court on an opposed motion has granted release pending a

20  determination of habeas -- on a habeas petition.

21       The two cases on which Petitioners rely, *Brooks versus*

22  *Wilson* and *Young versus Antonelli*, Eastern District of Virginia,

23  2018; District of South Carolina, 2021, respectively; both of

24  those decisions came on unopposed motions.  And in that context,

25  what the Court was looking at was that in each of those cases the

1    Fourth Circuit had recently adopted the petitioner's argument in

2    terms of improper -- improperly elevated mandatory minimums.

3        And so, if the habeas would have been granted in their

4    favor on the merits, then they would have served the full time

5    that they wouldn't have needed to serve had the Court been able

6    to rule on the habeas petition instantaneously.  So that's not a

7    similar situation to what we have here.  The court's habeas

8    remedy would still be effective even if --

9        THE COURT:  How so?

10       MR. BYERLEY:  Because the Court is -- because it's, one,

11   again going back to the jurisdictional issues; but, two, if the

12   Court grants the habeas petition on the merits, there's --

13   he's -- the authority exists for his detention.  It's not a

14   similar situation in *Young* and *Brooks* where the sentence was

15   invalid -- would have been found invalid if -- the elevated

16   sentence would have been found invalid if the Court had -- if he

17   had needed to await the entire resolution of the habeas

18   proceedings.

19       But, again, bringing this back to 1252(a)(5), (b)(9), and

20   g), he's challenging underlying decisions which are inextricably

21   tied up with the --

22       THE COURT:  I don't accept that reading.  I don't think

23   it's inextricably intertwined.  I don't.

24       MR. BYERLEY:  Yes, Your Honor.  Well, that's the

25   government's primary argument on this.  And then, to the extent

1    that the Court is inclined to grant the motion, the government

2    requests that the conditions set out in our supplemental briefing

3    filed on Monday be imposed on any release that the Court may

4    provide.  And, as well, we would ask for a stay of seven days

5    pending the government's determination on appellate recourse..

6         THE COURT:  Let's go through those.  In your supplemental,

7    you indicate that the Court should treat this as -- or approach

8    this as it does with respect to a preliminary injunction and

9    impose a bond.  That -- you rely on a Third Circuit case.  You

10   don't have any Fourth Circuit case that's done that, right?

11        MR. BYERLEY:  So, Your Honor, the -- it's widely

12   recognized, and I think, even in the recent *Ozturk* opinion from

13   the Second Circuit, recognized that granting this sort of release

14   early is tantamount to a preliminary injunction reviewable order,

15   as well as there's a recent Supreme Court case, I think,

16   recognizing that as well.

17        THE COURT:  But bond in a preliminary injunction context

18   is, you put -- you impose a bond so the person who the

19   injunction -- who has been enjoined, that there is something in

20   place that would make them whole if it was found out that the

21   injunction was issued in error.

22        But here, there is nothing that would be needed,

23   necessarily, to make the government whole, is there?

24        MR. BYERLEY:  Well, there would be the cost of redetaining

25   him.  The conditions that the government proposes in our --

1      THE COURT:  The cost of what?

2      MR. BYERLEY:  The cost of sort of redetaining him and

3  making a rearrest, in the event that that becomes necessary.

4      But, in any event, the Court can tailor its remedy to

5  adequately balance the needs of both sides, and we believe that

6  these conditions as we've suggested are reasonable, to the extent

7  the Court is inclined to grant release on Petitioner's motion.

8      THE COURT:  Many of the conditions that you would seek

9  seem to go to a risk of flight or they would be ones that the

10  Court would impose if there was a risk of flight.  What evidence

11  do you have that he poses a risk of flight?

12      MR. BYERLEY:  So, Your Honor, these are just generic --

13  these are just generic conditions that would be imposed by an

14  immigration judge if -- in the event that the immigration judge

15  was deciding this issue.

16      In terms of -- in terms of flight risk and danger to the

17  community, those things are not in the record.  But what we --

18  what the government would say is that Secretary Rubio made this

19  determination under 1227(a)(4)(C)(1), and so there is a

20  consideration about whether his -- whether his presence in the

21  community does cause potential serious foreign affairs

22  consequences that should also be considered kind of separate and

23  apart from flight risk and danger to the community.

24      THE COURT:  That determination has never been really

25  presented to this Court.  I haven't seen that memorandum.

1      MR. BYERLEY:  Yes, Your Honor, that's correct.  It's not

2  in the record yet, and I do not believe it's been filed in the

3  immigration court yet either at this point.

4      THE COURT:  Okay.  Do you have more?

5      MR. BYERLEY:  Your Honor, no.  Your Honor's reviewed the

6  briefing.  For the reasons stated in the government's briefing

7  and also as presented here today, the Government requests that

8  the Court deny the pending motions.  Thank you.

9      MS. GREGG:  Thank you, Your Honor.  As the Court already

10  addressed, I won't go through all the issues with the

11  government's argument as to the INA bars in this case, but it's

12  just notable that the *AADC* case is speaking to one provision in

13  the INA, and the government is using it to show that there's some

14  bar through 1252(b)(9), which Miranda clearly says that the

15  government does not have discretion to violate the

16  Constitution -- its discretion to detain does not include the

17  discretion to violate the Constitution, which is exactly what's

18  at issue here.

19      And, as the Court already adequately addressed, all the

20  other cases have gone the other way, cases that are dealing

21  specifically with students who are being targeted for their

22  speech under the same foreign policy bar.

23      The government brought up the case of Mr. Tall.  However,

24  Mr. Taal was not challenging his detention because he was not

25  detained at the time that he brought his case.  He was seeking an

1    injunction from being detained and, therefore, challenging the

2    underlying immigration charges, and so we would put that forth,

3    but all the other courts in this country that have looked at

4    these cases and situations identical to the one here for --

5    impacting Dr. Suri, they've all said that the INA doesn't -- no

6    provision of the INA bars consideration of their claims.

7         We've already gone over why habeas remedy is effective,

8    and I think that that's been sufficient, but for the *Eliely*

9    cases, the government talks about how we've cited other -- no

10   other case has been decided in this manner in the Fourth Circuit,

11   and that is specifically because this type of remedy is for

12   unusual cases.  There hasn't been a situation that has risen to

13   this level, and the government's conduct has not been so

14   egregious as it has in this case, but that shouldn't preclude the

15   Court from considering the same standard under *Mapp* that all the

16   other circuits -- or that many other circuits consider to be the

17   standard for immigration habeas cases.

18        Likewise, the government's contention that he should have

19   conditions placed on him, if he is to be released, we think that

20   that is inappropriate, since they have conceded that he is not a

21   flight risk or a danger to the community.

22        We have presented ample evidence that he is neither of

23   those things.  In fact, he is a well-respected and well-loved

24   member of his community with very strong ties to this Northern

25   Virginia area.

1      If the Court would like further assurances, we are happy

2 to consider any sort of location specific restrictions in the DMV

3 area, but we would ask that the Court not subject him to any

4 body-worn GPS because we find that is inappropriate, and the

5 government has not presented any reason that that should be the

6 case.

7      Additionally, Your Honor, we ask that, although -- we ask

8 that if the government seeks a stay on any potential grant of

9 release in Dr. Khan Suri's case, we ask that we be allowed to

10 address that as well.  We think that's not appropriate.

11      THE COURT:  Well, I think you should address that now,

12 their arguments with respect to the stay, because there's a

13 certain -- there's a test that must be satisfied before the Court

14 would grant a stay.

15      MS. GREGG:  Right.

16      THE COURT:  And the first is whether there would be

17 a -- is whether the applicant has shown a likelihood or strong

18 likelihood of succeeding on the merits.

19      MS. GREGG:  Correct, Your Honor.  And I think, by virtue

20 of a grant on this motion, we would have shown that they do

21 not -- they are not likely to succeed on the merits because of

22 the substantial claims in this case.

23      We don't believe that the -- the government hasn't

24 presented any evidence here for any lawful authority in detaining

25 Dr. Khan Suri.  We've demonstrated, on the other hand, that there

1   is evidence, sufficient evidence that his detention is currently

2   unlawful and violates his First Amendment and Fifth Amendment

3   rights.

4        Therefore, we would say that they would not likely succeed

5   on the merits.  They also cannot demonstrate any irreparable

6   harm, because, again, he is neither a flight risk or danger to

7   the community, and release will not interfere with his removal

8   proceedings.

9        As we've laid out in other motions, his removal

10  proceedings are remote, so even if he's in a detention center or

11  he's out free in the world, his immigration removal proceedings

12  are not impeded in any way.

13       He, however, will suffer irreparable harm.  The separation

14  from his family, from his community, from his studies, all

15  suggest -- all go to show that he would suffer if he is -- if a

16  stay was put in place.  Every day that he is detained, his rights

17  are being violated.

18       And also, his release will enable him to participate

19  meaningfully in the rest of these proceedings.

20       A stay would preclude that and continue to harm him in

21  that way.  The third factor relates to other parties' interests.

22  There are no other parties in this case.

23       And fourth is in public interest, and we would argue that

24  Dr. Khan Suri's release is very much in the public interest.  His

25  continued detention would likely continue to have a chilling

1    effect on protected speech, which is squarely in the public

2    interest because, you know, his release would signal to the rest

3    of the country, to noncitizens, that they will not be impacted

4    for exercising their First Amendment rights as well.

5         The community will benefit, and those who deeply care and

6    value him will benefit from his release as well.

7         And for all those reasons, Your Honor, we would say that

8    the government cannot prove any one of those factors that are

9    required for a stay.  Thank you.

10        THE COURT:  Anything else from either side?  I'm going to

11   take a brief recess, and then I'm going to come back.  I'll take

12   15 minutes.

13        (Thereupon, a recess in the proceedings occurred from

14   10:34 a.m. until 11:28 a.m.)

15        THE COURT:  Okay.  When there was a government's motion to

16   dismiss, I issued a memorandum opinion.  I'm not going to do that

17   in this case.  I plan on ruling from the bench.

18        In this case, Petitioner has moved for two forms of

19   relief:  One, to be returned to the Eastern District of Virginia,

20   and two, to be released on bond pending adjudication of his

21   habeas petition.

22        For the purposes of my ruling, I adopt the facts that I

23   laid out in my memorandum opinion that I previously issued, and

24   I'm first going to turn to the jurisdictional arguments raised by

25   the Respondents before I turn to the merits of Petitioner's

1    motion.

2        And first, Respondents argue that since Petitioner is

3    discretionarily detained under Section 1226(a) and 1226(e), that

4    restricts judicial review because the Secretary's discretionary

5    decisions or actions regarding the detention of alien or

6    revocation or denial of bond or parole, that, essentially, this

7    Court has no authority to review ICE's decision to detain the

8    Petitioner in Texas.

9        The Supreme Court clearly stated in the case of *Demore*

10   *versus Kim* that any provision said to bar review in habeas

11   requires a particularly clear statement of Congressional intent,

12   and that Section 1226(e) contains no explicit provision barring

13   habeas review.

14       And then, in *Miranda v. Garland,* the Fourth Circuit

15   further concluded that Section 1226(e) only forbids review of the

16   Attorney General's actions and decisions in individual

17   proceedings.

18       And with respect to the Petitioner's challenge to his

19   detention, the *Miranda* court also observed that, in *Jennings v.*

20   *Rodriguez*, the Supreme Court concluded that "the extent of the

21   government's detention authority is not a matter of discretionary

22   judgment, action, or decision, and is thus outside the scope of

23   1226(e)."

24       And, indeed, many circuits have reasoned that 1226(e) does

25   not limit habeas jurisdiction over constitutional claims or

1    questions of law or challenges to officials' statutory authority.

2         And so I find that here 1226(e) does not bar this Court's

3    review because this Petitioner does not challenge a specific

4    decision or action of the Attorney General regarding bond or

5    parole, and because he raises a constitutional challenge to the

6    secretary's authority, which is not a discretionary judgment.

7         Now, with respect to the claims that they -- or the bar

8    that they allege exists under 1252(g), in the *AADC* case, the *Reno*

9    *versus AADC*, the Supreme Court was clear that 1252(g) is to be

10   narrowly construed, and it only reaches three discrete actions of

11   the Attorney General, and that is the decision or action to

12   commence proceedings, adjudicate cases, or to execute removal

13   orders.

14        And, you know, there is a circuit split on whether

15   1252(b)(9) can even apply before a final order of removal is

16   issued, but -- and the Fourth Circuit hasn't definitively

17   answered the question.

18        But in looking at the cases in the Fourth Circuit, it's

19   clear that those rulings indicate that 1252(b)(9) would not bar

20   review here, because in *Miranda*, as I just stated -- well, there,

21   the Court found that, to the extent that it's a challenge to the

22   government's authority, then 1252(b)(9) does not bar the Court's

23   review.  And Respondents have relied on the case of *Johnson v.*

24   *Whitehead*.  That's another Fourth Circuit case to support their

25   position that review here would be precluded, but that case is

1    very different than the case before me, because there the

2    Petitioner was trying to, in the habeas case, was trying to

3    relitigate claims that he had made in his removal proceedings,

4    and that's not the case here.  The proceedings before me are

5    totally separate from the removal proceedings.

6         And finally, I turn to their allegation of the

7    jurisdictional bar because of 1252(a)(2)(B)(ii).  That statute

8    does not deprive this Court of jurisdiction because the statute

9    that they point to, 1231(g), is not a specified grant of

10   discretionary authority for the Attorney General to authorize

11   transfers.  It's just not, and that's clear when looking at the

12   *Reno* case, which is a Fourth Circuit case, 2019.

13        And so, for these reasons, I find that there is no

14   jurisdictional bar to the Court reaching or deciding this habeas

15   petition, and, therefore, I turn to the merits of the

16   Petitioner's motion, and I'm going to start with the motion for

17   bond release.

18        And here, the parties don't agree whether or not *Mapp v.*

19   *Reno* or *Eliely* provide the standard, and I don't think this Court

20   definitively has to decide that because, under *Mapp*, it requires

21   that the Petitioners raise substantial constitutional claims and

22   that there are exceptional circumstances that exist that makes

23   the grant of bail necessary to make the habeas remedy effective.

24   And in *Eliely*, the standard is very similar.  The only exception

25   is that it requires the prisoner to show substantial

1  constitutional claims on which he has a high probability of

2  success.  And the reason why I say it's not necessary for the

3  Court to reach that is because I find here that Dr. Khan Suri

4  would meet either.

5      And I also would like to point out, I'm not entirely sure

6  that *Eliely* does apply, because in that context it was a

7  petitioner who had been held mandatorily after having committed a

8  crime, and that's not the case here.

9      And so now I'm going to turn to those constitutional

10  claims.  And I don't think I need to reach all of it.  Petitioner

11  raises first a Fifth Amendment challenge to the lawfulness of his

12  detention, the Rubio determination, and their policy.

13      And, essentially, he alleges that he's being retaliated

14  against for his religious exercise, his speech, and for his

15  association.  Essentially, he alleges that he was targeted,

16  apprehended, and detained in order to retaliate against him and

17  punish him based on his or his wife's protected speech and his

18  association with his wife and his father-in-law.  And here, the

19  First Amendment extends to noncitizens, as it makes no

20  distinction between citizens and noncitizens.

21      Now, in order to make out a First Amendment retaliation

22  claim, a plaintiff or petitioner must show that he has a right

23  protected by the First Amendment; the Defendant's or Respondent's

24  actions were motivated or substantially caused by the exercise of

25  that right; and that the Defendant's actions caused the Plaintiff

1    some injury.  Now, what's uncontroverted before me in this

2    record, because I gave the government multiple opportunities to

3    submit any type of filing to controvert these claims or to

4    support their opposition to this motion, and they have declined.

5         And so what I have before me as uncontroverted is that the

6    plaintiff made posts, and these allegations are -- these

7    statements that I am outlining come from both the amended

8    petition, which was verified, as well as the declaration of his

9    wife, and that is that he made posts expressing support for the

10   Palestinian people criticizing the death toll in Gaza, affirming

11   international law principles, and criticizing U.S. support for

12   Israel's support in Gaza.

13        Additionally, his wife began posting on social media about

14   the war in Gaza, after losing family and friends in the war, and

15   she shared information about developments in Gaza.

16        Statements expressing support for the Palestinian people

17   criticizing the death toll in Gaza, affirming international law

18   principles, and criticizing U.S. support do not appear to qualify

19   as incitement, defamation, obscenity, or true threats of

20   violence, and thus they are unlikely to fall into any exceptions

21   for protected speech.

22        Indeed, I join several other courts that have found on

23   similar facts that speech regarding the conflict there and

24   opposing Israel's military campaign is likely protected political

25   speech.

1          Thus, the Court finds that Petitioner was likely engaging

2    in protected speech.

3          Now, with respect to his freedom of association claim that

4    is part of his First Amendment claim, he alleges that he is being

5    punished for his wife's Palestinian origin or speech or her

6    father's past as an advisor in the government in Gaza.

7          The First Amendment similarly restricts the ability of the

8    state to impose liability on an individual solely because of his

9    association with another.  That's the *Clayborne* case from the

10   Supreme Court.

11         Courts recognize a First Amendment freedom of intimate

12   association.  That's the *Roberts versus USJCs* case, also from the

13   Supreme Court.

14         And here, again uncontroverted, Petitioner has offered

15   evidence that he is being retaliated against and punished for his

16   marital relationship and his wife's familial relationship.  And

17   these concern his freedom of intimate association.  Relationships

18   such as family and marriage often want First Amendment protection

19   because of -- because such protections safeguard the ability

20   independently to define one's identity that is essential to any

21   concept of liberty.  That's the *Roberts* case.

22         And so I find that the Petitioner has satisfied the first

23   element as to his freedom of association claim because

24   Petitioner's marriage to his wife and association with her and

25   her father is protected by the First Amendment.

1    Now, with respect to the second element, Petitioner has

2 offered evidence sufficient for this Court to infer that

3 Respondent's detention and apprehension of Petitioner was caused

4 by his speech, his wife's speech, or his association with his

5 wife and his wife's father.

6    As evidence of the respondent's retaliatory motive,

7 Petitioner points to several statements of Respondents' or their

8 representatives.  First, he identifies statements made by

9 Secretary of State Marco Rubio on Twitter calling student

10 protesters Hamas supporters and indicating that "the United

11 States should cancel the visa of every foreign national out there

12 supporting Hamas and get them out of America."

13    Also, "We will be revoking the visas and/or green cards of

14 Hamas supporters in America so they can be deported."  These are

15 the statements that I am quoting -- I am referencing based on the

16 allegations in the petition.  I'm not indicating that Dr. Khan

17 Suri is a Hamas supporter.  Let me be clear about that.  I'm

18 recounting the statements here.

19    There was also a statement that they referenced by

20 President Trump, and it is, "We will terminate the visas of all

21 those Hamas sympathizers and will get them off our college

22 campuses, out of our cities, and get them the hell out of our

23 country".  And there was another statement.  "One thing I do is,

24 any student that protests, I throw them out of the country.  You

25 know, there are a lot of foreign students.  As soon as they hear

1   that, they're going to behave."

2        Additionally, the petition, as well as the -- it's docket

3   number 62, I believe, that was the supplemental filing by

4   Petitioner in this case, attaches additional statements or

5   postings made by DHS officials that specifically appear to

6   reference Dr. Khan Suri because he's referred to as a Georgetown

7   scholar, a Georgetown foreign exchange student.

8        I note for the record that, although officials -- and

9   these posts, I believe, were all after the filing of this

10  petition, and those statements were made publicly on Twitter or

11  in other forms.  There was no evidence submitted to this Court

12  regarding statements that he made.  The government did not submit

13  any statements to this Court in this regard, but yet these

14  statements were made out on social media.

15       So, Respondents have declined to dispute the merits of

16  Petitioner's claims that he is being retaliated against for his

17  speech or his association.  Essentially, in the opposition, they

18  rest on three propositions, and, one, that the challenges to

19  Petitioner's removability are more appropriately channeled to his

20  removal proceedings.  But, as I said earlier, this habeas

21  petition is not about the removal proceedings.  Those are

22  separate.  They are not being challenged here.

23       So I reject that argument.

24       They also argue that Respondents do not have to disclose

25  their reasons in cases concerning foreign affairs, which are

1    committed to the Secretary's discretion, and that the Secretary's

2    determination is a facially legitimate justification for his

3    determination and removal, and thus they are not required to show

4    or prove anymore.

5            As I noted earlier, I haven't even received evidence of

6    his determination because that memorandum was never submitted to

7    this Court, although it could have been.

8            But in any event, those arguments appear to rest on the

9    notions of deference and a presumption of regularity on the part

10   of the executive.

11           While there are many contentions in which courts should

12   take care to respect the prerogatives of the political branches,

13   whatever deference may be appropriate, concerns of national

14   security and foreign relations do not warrant abdication of the

15   judicial role.  That's the *Holder* case, *Holder v. Humanitarian*

16   *Law Project,* another Supreme Court case from 2010.

17           So, in no case do courts simply accept without more

18   government handwaving at deference and discretion.

19           And so, even in *Holder*, because Respondents rely on that

20   case, too, the *Holder v. Humanitarian Law Project* case, it

21   discusses the need for caution when faced with substitute courts

22   substituting their judgment for those of the political branches.

23           It also stated that, even when national security and

24   foreign relations are at stake, the Court does not defer to the

25   government's reading of the First Amendment.

1       Also, at no point is the government relieved of any duty

2   to adequately substantiate its determination.  And even in the

3   *Humanitarian Law Practice* case, the Court noted that, "the

4   judgment of Congress and the executive is entitled to significant

5   weight," but that statement alone, that concept alone does not

6   mean that it predetermines the outcome.

7       And finally, as to the First Amendment claim, the

8   Plaintiff or Petitioner has sufficiently demonstrated an injury

9   in terms of his continued detention.

10      Now, moving to the Fifth Amendment claim, under the due

11  process clause of the Fifth Amendment, "No person shall be

12  deprived of life liberty or process without due process of law."

13  And freedom from imprisonment, from government custody,

14  detention, or other forms of physical restraint lies at the heart

15  of liberty the clause protects."  That's *Zadvydas*, a Supreme

16  Court case.

17      Under *Zadvydas*, subsequent due process claims are

18  cognizable in civil immigration cases, and detention is not

19  designed to be punitive.  That's the *Demore* case and the *AADC*

20  case, both from the Supreme Court.

21      Now, detention is permissible to ensure the appearance of

22  noncitizens at future immigration proceedings and preventing

23  danger to the community, and I agree with other courts in

24  immigration-related cases who have found the Fifth Amendment due

25  process challenges to the detention to be substantial.  Here,

1    Petitioner alleges that his detention is unjustified because it

2    serves no lawful purpose and may be punitive.  And at this time

3    Respondents offer no other lawful purpose for Petitioner's

4    detention, nor directly refute that Petitioner's detention is

5    punitive.

6        In addition, Respondents have provided no other evidence

7    of Petitioner's activities, actions, or statement regarding

8    any -- that would consist of any Hamas propaganda or demonstrate

9    that he has done anything in support of Hamas.

10       To the extent Petitioner's apprehension and detention is

11   based on a chain of familial association, his marital tie to his

12   wife, and his familial tie to her father, these actions would

13   violate the due process clause in the Fifth Amendment as well as

14   the First Amendment.

15       And given Petitioner's uncontroverted evidence, I find

16   that he has shown a substantial likelihood -- or a likelihood, a

17   high probability of prevailing on those substantial

18   constitutional claims he has raised.

19       Now I'll turn to the second requirement, and that is the

20   exceptional circumstances that exist that would grant -- which

21   would make the grant of bail necessary to make the habeas remedy

22   effective.

23       Okay.  Now, considering the traditional bail factors, we

24   look to the risk of flight or danger to society.  And here,

25   there's no evidence to suggest that Petitioner is a flight risk

1    or poses a danger to society.  He is a professor at Georgetown
2    University.  He is married to an American citizen.  He has three
3    young children, all who reside in Virginia.  Respondents have
4    offered no reason to suggest that he would have any incentive to
5    flee.
6         In addition, I received letters from many colleagues,
7    community members, and even family written on Dr. Khan Suri's
8    behalf, emphasizing his personal and scholarly commitments to
9    peace and conflict resolution.
10        What those letters also evidence, though, are very strong
11   ties to community here.  And so, additionally, the Court has seen
12   no credible evidence supporting that he is a danger to the
13   community.  He has not been accused of any crime, and he's not
14   been convicted of any crime.  No criminal record was presented to
15   this Court or any facts from which this Court could conclude that
16   he would be any sort of danger.
17        I also find that his release is necessary to make habeas
18   remedy effective.  It's the only remedy that could make habeas
19   remedy effective, and that's for many reasons.  One is that it
20   would disrupt the chilling effect of retaliation for protected
21   political speech or intimate associations, but, more importantly
22   for him, having been confined for this amount of time for what
23   the record before this Court is punitive reasons.
24        As the Supreme Court explained, the loss of First
25   Amendment rights for even minimal periods of time unquestionably

1    constitutes irreparable harm.

2         And so, because I find that Petitioner has raised

3    substantial constitutional claims for which he has a high

4    probability of success and that extraordinary circumstances exist

5    which make the grant of bail necessary to make the habeas remedy

6    effective, this Court grants Petitioner's motion for bond

7    release, and so I will deny the motion for return as moot.

8         In terms of conditions, I'm going to impose the following:

9    And that is that he reside in the -- in Virginia; that he attend

10    all court hearings in this case in person, unless excused by

11    order of the Court; and that he participate in his -- the

12    separate removal proceedings.

13         I'm not going to impose any of the other suggested

14    conditions proposed by the government because I don't find that

15    they are necessary in this case because they typically speak to

16    situations where there is the concern about flight, and I just

17    don't find that here.

18         I also do not think it is necessary to impose any bond in

19    this case, because that's also not necessary to assure his

20    appearance.  Your exceptions are preserved.

21         Mr. Byerley, did you want to be heard separately as to

22    your motion to stay, or did you already raise everything that you

23    wanted to raise?

24         MR. BYERLEY:  No, Your Honor.  The only -- the only basis

25    for our request for a stay is to allow the government to seek

1    appellate recourse -- to consider seeking appellate course, which

2    involves consultation with multiple agencies, as well as OC, a

3    process that takes time.  A week to seven days is an appropriate

4    amount of time, but the reason for that is stated in our papers.

5    Thank you.

6          THE COURT:  Okay.  I understand.  Okay.  And so, in order

7    to determine whether a grant of stay is appropriate, and I listed

8    this out earlier when I gave Petitioner's counsel the opportunity

9    to respond or to address it in advance, the first prong is

10   whether there has been a strong showing of likelihood to succeed

11   on the merits, and based on my ruling in regards to Petitioner's

12   high probability of succeeding on the merits, you have not met --

13   or the government has not met the first prong.

14         Additionally, I find that there isn't any irreparable harm

15   here by me ordering release.  In making that finding, I'm

16   saying -- because there -- there's no showing that he's a risk of

17   flight or danger to the community, so he will be here and

18   available to still continue his participation in his removal

19   proceedings, which, from what I understand, are remote anyway.

20         Third, there does not appear to be any other parties

21   interested in the proceedings that would be injured by the stay.

22         And fourth and finally, I find that his release is in the

23   public interest in order to disrupt the chilling effect on

24   protected speech.

25         And so I'm going to decline to stay my ruling pending

1    appeal.  Exceptions are preserved.  Is there anything further?

2        MS. GREGG:  Yes, Your Honor.  We would just like to

3    discuss a little bit of the logistics, since this is an oral

4    order given.

5        THE COURT:  Well, I'll have a -- I'm going to issue an

6    order, a written order granting your motion.

7        MS. GREGG:  I appreciate that, Your Honor.

8        THE COURT:  Okay.

9        MS. GREGG:  And I would just draw the Court's attention to

10   issues that were presented in Ms. Ozturk's case when she was

11   given an order that didn't specify exactly the conditions.

12       THE COURT:  Okay.

13       MS. GREGG:  Namely, that ICE -- there was a large lag time

14   between the ordering of her release and her actually being

15   released because ICE attempted to put GPS monitoring on her.

16       THE COURT:  Well, I've already --

17       MS. GREGG:  Outside of --

18       THE COURT:  Said that I was not going to -- one of their

19   requests here was the GPS monitoring, and I have refused that,

20   because I said that it is not necessary here.  You usually put

21   that on when there's a flight risk, and I said there's no flight

22   risk.

23       MS. GREGG:  Of course, Your Honor.  I agree with that, as

24   well.  I just wanted to make it clear that that is something that

25   has come up in another case, and so that it -- if the Court would

1    be willing to make that explicit in the written order, in case

2    there are any issues in Prairieland, we have an attorney there

3    waiting for the Court's decision here.

4         THE COURT:  Okay.

5         MS. GREGG:  And if the Court is amenable to any other

6    clarifications to the order, we would ask that it make clear that

7    he cannot be redetained or that he shouldn't be redetained by ICE

8    without giving sufficient notice to the Court and to counsel so

9    that we can look into the basis for redetention, given that he

10   needs to travel from Prairieland to here, which would require him

11   to go through TSA or make a long drive.  Redetention under the

12   current environment in this country is of concern for us, as well

13   as to the issues that -- redetention, which the government

14   alluded to, and so we would just, you know, ask the Court --

15        THE COURT:  Okay.  You said could not be redetained

16   without giving sufficient notice to the Court and counsel; 48

17   hours?

18        MS. GREGG:  Yes, Your Honor, so that we can appear before

19   the Court and have an opportunity to hear the government's

20   reasoning.

21        THE COURT:  Okay.  Anything else?

22        MS. GREGG:  That's all, Your Honor.

23        THE COURT:  So no -- explicitly state "no GPS monitoring,"

24   and then include this -- you're requesting that the Court include

25   this requirement that he not be redetained without notice to the

1    Court and counsel.

2         Mr. Byerley, do you want to be heard on these?

3         MR. BYERLEY:  Your Honor, I would need to confer with my

4    client based on the order.  I don't want to say anything out of

5    turn at this point without --

6         THE COURT:  I understand that.  I understand that.  Okay.

7    But just know I'm going to enter this order as requested.  I find

8    that reasonable, and so I am, but -- I know you all will be

9    taking all steps as soon as I leave the bench.  So, if there's

10   nothing -- if there's nothing further, then we are adjourned.

11        (Proceedings adjourned at 12:07 p.m.)

12

13                  **C E R T I F I C A T E**

14

15            I, Scott L. Wallace, RDR-CRR, certify that
        the foregoing is a correct transcript from the record of
16      proceedings in the above-entitled matter.

17      /s/ Scott L. Wallace                5/15/25
        -----------------------------      ----------------
18      **Scott L. Wallace, RDR, CRR            Date**
          **Official Court Reporter**

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25