**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| BADAR KHAN SURI,<br><br>*Petitioner*,<br><br>v.<br><br>DONALD J. TRUMP, *et al*.,<br><br>*Respondents*. | Case No. 1:25-cv-00480 (PTG/WBP) |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Respondents (hereafter "the Government") submit this response in opposition to Petitioner Badar Khan Suri's ("Suri's") motion for a preliminary injunction. In his Motion, Petitioner seeks the restoration of his Student Exchange and Visitor Information System ("SEVIS") record (ECF No. 79). The Court should deny the Motion because Suri cannot satisfy the requirements of a preliminary injunction for the following reasons:

- The requested relief is beyond the scope of a petition for habeas corpus;
- Suri never served the Government pursuant to Federal Rule of Civil Procedure 4(a);
- The Immigration and Nationality Act ("INA") strips the Court of jurisdiction to consider the SEVIS challenge;
- The claim is barred by the Privacy Act of 1974; and
- Suri's third-party claim is not cognizable in habeas.

## PROCEDURAL BACKGROUND

The original and amended petitions, ECF Nos. 1, 34, sought habeas relief principally by challenging the legality of Suri's arrest incident to removal proceedings and detention pending removal proceedings, on the basis that the grounds for instituting removal proceedings violate his alleged constitutional rights. On March 20, 2025, the Court entered an *ex parte* injunction enjoining Suri's removal from the United States ("U.S."). On May 6, 2025, this Court concluded that it had habeas jurisdiction over Suri's challenge to his detention, and on May 14, 2025, the Court ordered that Suri be released from Immigration and Custom Enforcement ("ICE") custody and enjoined his re-detention without notice to the Court and Suri's counsel.

On June 23, 2025, Suri moved for leave to file a Second Amended Petition ("SAP").[1] In addition to asking the Court to order Suri's release, the SAP also requested that the Court "reinstate, retroactive to March 18, 2025, Petitioner's J-1 exchange visitor status and his corresponding SEVIS record and Petitioner's children's J-2 status and corresponding SEVIS records" and that the Court enjoin Defendants from terminating Suri's SEVIS entry absent "at least 21 days advance notice to Petitioner and his counsel," even if "newly discovered, independent legal ground to terminate the records" were to arise. Suri also asks the Court to insulate Suri from "any consequence, including adverse immigration action, arising out of the termination of Petitioner's or his children's SEVIS records or J-1 or J-2 status[.]" SAP at Prayer for Relief.

As the accompanying declaration explains, "[o]n March 18, 2025, the Department of State terminated Mr. Suri's participation in the exchange visitor program and electronically entered the termination in the SEVIS record. The effective date of the termination was set to March 15, 2025, the date that the Secretary of State issued a determination that Mr. Suri' activities and presence in the U.S. rendered him deportable under section 237(a)(4)(C)(i) of the INA, 8 U.S.C. § 1227(a)(4)(C)(i). As a consequence of the termination, the status of his J-2 dependents was also changed to 'Terminated' on March 18, 2025." Declaration of Rebecca Pasini, Deputy Assistant Secretary for Private Sector Exchange for the U.S. Department of State, Bureau of Educational and Cultural Affairs (ECA) ("Pasini Decl.") (ECF #98-1) at ¶ 6. However, "[o]n July 3, 2025, upon further review, the Department [of State] reinstated Mr. Suri's visitor exchange program and Mr. Suri's SEVIS record and his J-2 dependents SEVIS records were updated to reflect 'Active' status *nunc pro tunc* to March 18, 2025." *Id.* at 7. The Government now files its opposition to Suri's preliminary injunction motion, which largely seeks that which he already has.

---

[1] The Government took no position on the propriety of amendment. *See* ECF #86.

**PETITIONER'S MOTION**

Suri filed the instant motion (hereinafter, "the Motion") on June 23 seeking a preliminary injunction that, *inter alia*: requires the Government to reactivate his SEVIS record and the SEVIS records of his children; enjoins the Government "from terminating Petitioner's SEVIS records and his children's SEVIS records for the duration of this litigation, unless [the Government] become[s] aware of a newly discovered, independent legal ground to terminate those records"; enjoins the Government from terminating his SEVIS records even if there are "newly discovered, independent legal grounds" to terminate the SEVIS records without "at least 21 days' advance notice to Petitioner and his counsel of any intent to terminate Petitioner's or his children's SEVIS records"; and insulates Suri from "any consequence arising out of the termination of [his] or his children's SEVIS records or J-1 or J-2 status for the duration of this litigation." ECF #79-7 at 2.

The Motion argues that the termination of his SEVIS record and those of his children violated the APA and the Constitution. He alleges "his Georgetown email account and his Georgetown ID has been deactivated, restricting his access to university facilities and impeding his ability to conduct his research." ECF No. 79-1 at 15. He further claims, "the termination of [his] SEVIS record could create ongoing immigration consequences for both him and his children" because the "terminated status of this record creates uncertainty and could impact [his] and his children's prospects for future immigration benefits in the [U.S.]." *Id.* at 16.

Integral to Suri's Motion is his repeated, false claim that his visa was revoked when, in fact, his visa expired of its own accord. As explained further below, the State Department issues visas with expiration dates corresponding with the dates listed on the Form DS-2019, when the applicant applies for a J-1 visa overseas. 9 FAM 402.5-6(I)(6). According to Suri's own declaration, his "visa was approved, and [he] came to the U.S. in December, 2022 to begin [his]

program at Georgetown on January 1, 2023[,]" the initial period of which "was one year[.]" ECF #79-2 at ¶¶ 3-5. Suri's J-1 visa expired on its own in October 2023, a year after it was issued.[2] *See id.* Suri's oft-repeated claim that his long-expired visa was revoked is false. Declaration of Deputy Assistant Secretary Stuart Wilson ("Wilson Decl.") (ECF #98-2).

## LEGAL FRAMEWORK

### I. The J-1 Nonimmigrant Visiting Research Scholar Classification

The INA allows for the entry of "an alien having a residence in a foreign country which he has no intention of abandoning who is a bona fide student, scholar, trainee, teacher, professor, research assistant, specialist, or leader in a field of specialized knowledge or skill, or other person of similar description, who is coming temporarily to the [U.S.] as a participant in a program designated by the Director of the [U.S.] Information Agency, for the purpose of teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, or receiving training[.]" 8 U.S.C. § 1101(a)(15)(j) ("J-1 nonimmigrant"). The "minor children of any such alien" may be derivative beneficiaries of J-1 nonimmigrants. *See id.* ("J-2 nonimmigrant").

Generally, applicants must meet the following requirements to qualify for a J-1 nonimmigrant visa: "[a]cceptance to a designated exchange visitor program, as evidenced by presentation of Form DS-2019, Certificate of Eligibility for Exchange Visitor (J-1) Status"; "[s]ufficient funds, or adequate arrangements made by a host organization, to cover expenses"; "[s]ufficient proficiency in the English language to participate in their program"; "[p]resent intent

[2] Although the visa expired in December 2023, Suri's status remains valid until December 2026, because that is the duration of his academic program. *See* Pasini Decl. at 3. As explained in text, a visa, status, and SEVIS are different things. Expiration of a visa does not necessarily mean expiration of status in all contexts, and termination of SEVIS records does not itself terminate status or revoke a visa.

to leave the [U.S.] at conclusion of program"; "[p]ossession of qualifications for the program offered"; and compliance with the applicable portions of 8 U.S.C. § 1182(e). 9 FAM 402.5-6(C); *see also* U.S. Citizenship and Immigration Services ("USCIS") Policy Manual, Vol. 2, Part D, Chapter 2 (J Exchange Visitor Eligibility) (https://www.uscis.gov/policy-manual/volume-2-part-d-chapter-2). Visiting researchers, such as Suri, "must not be a candidate for a tenure track position"; "not be[] physically present in the [U.S.] as a nonimmigrant pursuant to the provisions of 8 U.S.C. § 1101(a)(15)(J) for all or part of the twelve-month period immediately preceding the date of program commencement set forth on his or her Form DS-2019," and not be a repeat participant (as defined in 22 C.F.R. § 62.20(i)(2)). 22 C.F.R. § 62.20(d).

As to the first general requirement—the Form DS-2019, Certificate of Eligibility for Exchange Visitor (J-Nonimmigrant) Status—it "is the document required to support an application for an exchange visitor visa (J-1). A Form DS-2019 is a two-page State Department document which can only be produced through SEVIS that supports an individual's application for a J nonimmigrant visa, and aids State Department in adjudication of the nonimmigrant visa. SEVIS is the DHS database developed to collect information on F, M, and J visa holders[.] The prospective exchange visitor's signature on page one of the Form DS-2019 is required. Page two of Form DS-2019 consists of instructions and certification language relating to participation. Form DS-2019 is generated with a unique identifier known as a 'SEVIS ID number' in the top right-hand corner, which consists of an 'alpha' character (N) and 10 numerical characters[.]" 9 FAM 402.5-6(D)(1) (internal cross-references omitted). "After a J-1 visa has been issued, [the U.S. Department of State] return[s] the completed Form DS-2019 to the exchange visitor." 9 FAM 402.5-6(D)(5). The Form DS-2019 is "the basic document required to support an application for an exchange visitor visa and for maintaining valid exchange visitor program participant status." 9

FAM 402.5-6(I)(1). A J-1 visa will be issued for the program dates listed on the Form DS-2019. 9 FAM 402.5-6(I)(6)(e).

Subject to certain exceptions, individuals admitted as J-1 nonimmigrants often do not have a set time period for which they are admitted to the U.S., but are admitted for a duration of status. USCIS Policy Manual, Vol. 2, Part D, Chapter 3 (Terms and Conditions of J Exchange Visitor Status). For "research scholars" such as Suri, they "may be authorized to participate in the Exchange Visitor Program for the length of time necessary to complete his or her program, provided such time does not exceed five years." *Id*.; 22 C.F.R. § 62.20(i)(1). The five-year period is generally not subject to renewal, and those who hit the five-year limit "are not eligible for participation as a professor or research scholar for a period of two years following the end date of such program participation as identified in SEVIS." 22 C.F.R. § 62.20(i)(2). Many individuals admitted as J-1 nonimmigrants are also subject to the two-year home-county physical presence requirement under § 1182(e), meaning that they must return to their home country for a period of at least two years before becoming eligible to apply for certain nonimmigrant visas, an immigrant visa, or for permanent residence. Suri is a J-1 nonimmigrant subject to § 1182(e). Declaration of Deputy Assistant Secretary Stuart Wilson ("Wilson Decl.") (ECF #98-2).

**II. The Student and Exchange Visitor Information System ("SEVIS")**

To track and manage F, M, and J programs, Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the [U.S.] [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C.

§ 1372(a)(1).[3] In exercise of this authority, the Secretary of Homeland Security created and maintains SEVIS, "a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program-certified schools, F-1 and M-1 students who come to the [U.S.] to attend those schools, U.S. Department of State designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, Student and Exchange Visitor Information System Overview, https://perma.cc/93RQ-WVLJ (pinned May 5, 2025). SEVIS "is designed to monitor the academic progress, movement, etc. of foreign students and exchange visitors from entry into the [U.S.] to departure. The Student and Exchange Visitor Program ("SEVP") manages SEVIS. SEVP is under the auspices of the National Security Investigations Division of ICE." 9 FAM 402.5-4(A). SEVIS "monitors schools and programs, students, exchange visitors, and their dependents throughout the duration of approved participation within the U.S. education system." *Id.* The U.S. Department of State treats the SEVIS record not as the status itself, but rather as the "definitive record" of status and/or eligibility. 9 FAM 402.5-4(B); 9 FAM 402.5-6(J)(1). The use of SEVIS is "mandatory for designated program sponsors." 8 C.F.R. § 214.2(j)(1)(viii). While SEVP manages SEVIS, the State Department's Bureau of Educational and Cultural Affairs ("ECA"), in its administration of the Exchange Visitor Program for J nonimmigrants, has access to SEVIS and records of J nonimmigrants. *See* Pasini Decl.

Section 1372 relates to the system of records that is used to maintain information about F, J, and M students; it does not equate the records in the system to nonimmigrant status nor does it authorize or provide a method to terminate nonimmigrant status via that system. *See* 8 U.S.C.

[3] 8 U.S.C. § 1372 refers to the Attorney General, but those functions were transferred to DHS in the Homeland Security Act of 2002.

§ 1372. Further, Congress mandated that ICE shall administer the program to collect information on nonimmigrant foreign students described in 8 U.S.C. § 1372 and "shall use" the information collected in SEVIS "to carry out the enforcement functions of the agency." 6 U.S.C. § 252(a)(4). In accordance with the Privacy Act of 1974, DHS "modif[ed], rename[d] and reissue[d]" the SEVIS database as "DHS/ICE-001 Student and Exchange Visitor Information System (SEVIS) System of Records." *See* 86 Fed. Reg. 69663 (Dec. 8, 2021).

Importantly, the termination of a SEVIS record does not necessarily indicate a termination of nonimmigrant status. DHS, *SEVIS: Terminate a Student*, https://perma.cc/E9C2-9GR5 (pinned Apr. 28, 2025) ("[T]ermination is not always negative. [School officials] can terminate records for several normal, administrative reasons."). Under the INA, in this context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system used by the Department to maintain information on certain noncitizens who come to the U.S. to study, *see* ICE, *SEVIS Overview*, https://perma.cc/93RQ-WVLJ; (2) a visa, which is document issued by the State Department reflecting permission to apply for admission to the U.S. at a port of entry, *see* State Dep't, *Visitor Visa*, https://perma.cc/HN23-H3DK (pinned Apr. 28, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the U.S., *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR (pinned Apr. 28, 2025). Terminating a SEVIS record only terminates the first of these; it does not, in-and-of-itself, terminate immigration status or revoke a visa.

## III. The Privacy Act of 1974

The Privacy Act of 1974, Pub Law No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. See Pub. L. 93–579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The

Privacy Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. *See generally* 5 U.S.C. § 552a. A system of records is defined by statute as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. *Id*. § 552a(a)(5).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. 5 U.S.C. § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A), which permit suit in district court to correct a record, and permits damages in certain instances if an individual is harmed by the government's incorrect records. *Id*. § 552a(d)(3), (g)(1)(A)-(D).

In doing so, Congress also chose to limit the Privacy Act's provisions for access and redress to those who qualify as "a citizen of the [U.S.] or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. *Id*. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. India, Suri's home country, is not among the designated countries. 82 Fed. Reg 7860-61 (Jan. 23, 2017); 84 Fed. Reg. 3493-94 (Feb. 12, 2019).

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. "[P]arties

seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). "[C]ourts considering whether to impose preliminary injunctions must separately consider each *Winter* factor." *Id.* at 21. Where, as here, the Government is the opposing party, the final two factors merge. *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022).

**ARGUMENT**

Suri cannot meet the standard for injunctive relief. Suri's (and his children's) SEVIS records have already been reinstated, and so there is no basis or need for this Court to enter a preliminary injunction directing the Government to do what has already been done. Regardless, there are multiple additional barriers to the entry of the preliminary injunction that Suri seeks. First, Suri failed to effectuate service under Federal Rule of Civil Procedure 4(a). Second, Suri's SEVIS claim and the requested injunction are beyond the scope of a federal court's habeas jurisdiction. Third, the INA's "zipper clause" deprives this Court of jurisdiction to enter the requested injunction. Fourth, Suri's requested injunction is barred by the Privacy Act, which provides the exclusive remedies for records-related claims. Finally, Suri's purported third-party claim on behalf of his children is improper in this habeas proceeding – and moreover, the fact that Suri is bringing a third-party claim on behalf of those who were never detained underscores the point that this case in actuality challenges the Government's initiation of removal proceedings.

The Court should deny Suri's motion. But to the extent the Court is disinclined to deny Suri's motion outright, and given the thorny jurisdictional issues at play, the Government respectfully requests that the Court should instead hold the motion in abeyance unless or until Suri's SEVIS record is re-terminated.

**I. Suri Never Effectuated Service.**

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd*., 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(i) specifies how service may be effectuated on the federal government. Further, "Rule 4(m) requires the dismissal of defendants who remain unserved ninety days after the filing of a complaint unless 'the plaintiff shows good cause.'" *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). "[F]or purposes of Rule 4(m), 'good cause' requires some showing of diligence on the part of the plaintiffs. Put conversely, good cause generally exists when the failure of service is due to external factors, such as the defendant's intentional evasion of service." *Id*.

Suri never effectuated service, and it has been over 90 days since the Amended Petition was filed on April 8, 2025. In the 90 days since the Amended Petition was filed, no summons has been issued (or requested). "While 'good cause' is a flexible standard, diligence provides a touchstone for an appellate court that is reviewing a dismissal under Rule 4(m)." *Attkisson*, 925 F.3d at 627. Even if this entire action were not dismissed due to Suri's prolonged failure to effect service on any Respondent, that failure to effect service precludes entry of a preliminary injunction. *R.M.S. Titanic*, *Inc. v. Haver*, 171 F.3d 943, 958 (4th Cir. 1999).

**II. Petitioner's Requested Relief is Beyond the Scope of Habeas.**

Suri has brought a habeas petition challenging his removal proceedings, and ICE's discretionary decision under 8 U.S.C. § 1226(a) to detain him. Now he requests that this Court compel Government to adjust entries in a government recordkeeping system. Such relief does not

sound in habeas. "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 55 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

Suri originally sought "simple release," which is a viable habeas claim, but his request for the alteration of entries in a government database have nothing to do with his detention or release. *See Thuraissigiam*, 591 U.S. at 119 ("Claims so far outside the core of habeas may not be pursued through habeas.") (internal quotations and citations omitted); *see also Garcon v. Cruz*, No. 6:15-1480-RMG-KFM, 2015 U.S. Dist. LEXIS 57222, at *1 (D.S.C. Apr. 28, 2015) ("One cannot convert a habeas action into a civil rights action."), *R&R adopted*, 2015 U.S. Dist. LEXIS 57225 (D.S.C. Apr. 30, 2015). As the Supreme Court recognized, "while the release of an alien may give the alien the opportunity to remain in the country if the immigration laws permit," the writ is not a mechanism for otherwise directing the operation of the immigration laws. *Thuraissigiam*, 591 U.S. at 125.

The oddity of entertaining Suri's request within an action brought as a habeas petition is amplified because "the ordinary remedy upon a finding that final agency action violates the APA is vacatur of the decision and remand to the agency." *Harrison v. Kendall*, 670 F. Supp. 3d 280, 295 (E.D. Va. 2023). "Ordering a specific remedy or outcome on remand" is "inconsistent with the Court's role in reviewing final agency action under the APA, in which it 'sits as an appellate tribunal.'" *Id*. (quoting *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)); *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013) ("Usually, where a district

court reviews agency action under the APA, it acts as an appellate tribunal, so the appropriate remedy for a violation is 'simply to identify a legal error and then remand to the agency.'" (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013))). Suri's theory that the SEVIS termination has some causal connection with detention such that it can be pursued through habeas is belied by the fact that ruling in Suri's favor would at most ratify the Department of State's decision to restore his SEVIS record, but would have no impact on the detention issue. Hence, this case would no longer about release from restraint, which is what habeas is meant to protect. *See Thuraissigiam*, 591 U.S. at 121 (citing cases); *see also Pierre v. U.S.*, *525 F.2d 933, 935-36 (5th Cir. 1976)* (providing that habeas corpus "cannot be utilized as a base for the review of a refusal to grant collateral administrative relief or as a springboard to adjudicate matters foreign to the question of the legality of custody").

Therefore, this Court should decline to extend the writ beyond established precedent to award relief other than release from custody.

## III. This Court Lacks Jurisdiction to Address Suri's SEVIS Claim.

### A. Section 242 of the INA, 8 U.S.C. § 1252, Bars Review

This Court previously rejected Respondents' arguments that it lacks jurisdiction over this action because it was filed when Suri had been outside of this District for hours and notified in advance of his intended place of detention, and because of various provisions in § 1252. ECF No. 60, 65 (the government is continuing its interlocutory appeal). Much of the Court's reasoning for rejecting the Government's jurisdictional arguments depended upon treating Suri's challenge to his detention as distinct from a challenge to his removal proceedings. May 14 Tr. at 26:4-5 ("The proceedings before [the Court] are totally separate from the removal proceedings."). But as the Motion itself makes clear, the termination of Suri's SEVIS record was based on the Secretary of

State's adverse foreign policy determination under 8 U.S.C. § 1227(a)(4)(C),[4] which in turn is directly related to Suri's removal proceedings—*not* his detention. ECF #79-1, at 6-8; Pasini Decl. ¶ 6 ("The effective date of the termination was set to March 15, 2025, the date that the Secretary of State issued a determination that Mr. Suri' activities and presence in the [U.S.] rendered him deportable under the [INA] section 237(a)(4)(C)(i).").[5]

As a result, all of the Government's previous INA-based jurisdictional arguments continue to apply to the SEVIS challenge because the record demonstrates the Government's termination of Suri's SEVIS record coincided with the Secretary of State's determination that he was removable and the commencement of those removal proceedings. The termination of Suri's SEVIS record in these circumstances is outside of the Court's jurisdiction under 8 U.S.C. § 1252, which states that a petition for review following removal proceedings "shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). The "'zipper' clause" consolidates judicial review of all claims connected to removal proceedings and actions into the petition-for-review mechanism. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). This zipper clause says that "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the [U.S.] . . . shall be available only in judicial

---

[4] Suri repeatedly claims that his visa was revoked when, in fact, Suri's visa expired of its own accord and Suri's visa was not revoked by the State Department. Wilson Decl. ¶¶ 4, 5, 7. As noted above, the State Department issues visas with expiration dates corresponding with the dates listed on the Form DS-2019, when the applicant applies for a J-1 nonimmigrant visa overseas. 9 FAM 402.5-6(I)(6). According to Suri's own declaration, the initial period of his program "was one year[.]" ECF #79-2 at ¶¶ 3-5. Accordingly, Suri's J-1 nonimmigrant visa expired on its own in October 2023. *See id.* Suri does not explain what effect a purported revocation of an expired visa would have had, even if it occurred.

[5] The termination of Suri's SEVIS record is not necessary for initiation of enforcement action and removal proceedings; to initiate enforcement action and removal proceedings, Suri, as an admitted alien, must be removable from the U.S. under a ground of deportability under 8 U.S.C. § 1227(a).

review of a final order under this section." 8 U.S.C. § 1252(b)(9). Furthermore, "no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review . . . such questions of law or fact." *Id*. "This section… consolidates review of matters arising from removal proceedings 'only in judicial review of a final order under this section,' and strips courts of habeas jurisdiction over such matters." *Afanwi v. Mukasey*, 526 F.3d 788, 796 (4th Cir. 2008), *vacated on other grounds*, 558 U.S. 801 (2009).

In other words, the termination of Suri's SEVIS record presents questions "arising from [an] action taken… to remove" Suri and therefore falls within the zipper clause that channels review away from this Court to a petition for review. 8 U.S.C. § 1252(b)(9). To be sure, not every termination of a SEVIS record indicates that the subject nonimmigrant is removable; indeed, the termination of a SEVIS record is not necessarily negative at all. But in this case, it is clear from the allegations surrounding the termination of Suri's SEVIS record that this termination arises from Suri's removability and contemplated removal. Per Suri's allegations, Suri's SEVIS record was terminated upon the Secretary's § 1227(a)(4)(C)(i) designation and the resulting removal proceedings. It was therefore a "removal related activity" that falls within the zipper clause. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir 2016). To be sure, the Second Circuit recently observed in this context that "overlap, even substantial overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Ozturk v. Hyde,* 136 F.4th 382, 400 (2d Cir. 2025). But the fact that the SEVIS termination here occurred based on the Secretary's removability determination and concurrent with operational efforts to initiate removal proceedings, which were also based on the Secretary's determination, demonstrates that in this instance that the SEVIS termination was a part of—not remote to—actions to remove Suri from the U.S. A challenge to the SEVIS termination, which is bound up in the initiation of removal

proceedings, invites the Court to review that which Congress has said it should not review. Suri may litigate his deportability through the administrative removal process and ultimately with the appropriate court of appeals through a petition for review. 8 U.S.C. §§ 1252(a)(2)(D), (a)(5), and (b)(9). This Court, however, lacks jurisdiction to hear this claim. Suri is therefore unlikely to succeed on the merits.

**B. The Privacy Act Also Bars Suri's Request to Adjust the SEVIS Records.**

"[A]absent a clear and unequivocal waiver of sovereign immunity," the "[U.S.] and its agencies are generally immune from suit in federal court." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,* 38 F.4th 1099, 1105 (D.C. Cir. 2022). Although the APA provides a limited waiver of the government's sovereign immunity for suits challenging final agency action and "seeking relief other than money damages," it does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. That carve-out "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

The Privacy Act of 1974, 5 U.S.C. § 552a, limits Suri's ability to seek the relief he is now seeking. The Act establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. See Pub. L. 93 579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a. A system of records is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. *Id.* § 552a(d)(1)-(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A). *Id.* § 552a(d)(3). The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id.* § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the U.S. if the complainant substantially prevails. *Id.* § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id.* §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the [U.S.] or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. 114-126 (Feb. 24, 2016), 130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and majority of the countries of the European Union. 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019). India, where Suri is from, has not been designated. *See* https://www.justice.gov/opcl/overview-privacy-act-1974-2020-edition/JRA (listing countries).

Though the APA generally waives the government's immunity, § 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute.

. . expressly or impliedly forbids the relief which is sought.'" *See also Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 215 ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Id.* at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the U.S. cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation waiving the sovereign immunity of the [U.S.], those conditions must be strictly observed, and exceptions thereto are not to be lightly implied."). In this case, the APA does not apply because the Privacy Act provides a specific remedy. Specifically, 5U.S.C. § 552a(g)(1)(C) states,

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the [U.S.] shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Suri's claims seek relief provided by the Privacy Act: the amendment of his SEVIS Record and those of his children. ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the [U.S.] under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the [U.S.]"). The Privacy Act, however, precludes review of Suri's attempt to amend his SEVIS record because Suri is a foreign national. "[T]the term 'individual' means a citizen of the [U.S.] or an alien lawfully

admitted for permanent residence." 5 U.S.C. § 552a(a)(2). Because Suri is neither a U.S. citizen nor a lawful permanent resident, the Privacy Act precludes judicial review of his claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

## IV. Suri's Third-Party Claim is Improper

The Motion requests relief for Suri's third-party, non-citizen children. None of Suri's petitions in this matter were brought in a representative capacity, nor are Suri's non-citizen children parties to this matter. Regardless of whether Suri can show next friend standing, his capacity to do so must be alleged in the petition. *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990); *T.W. by & Through Enk v. Brophy*, 954 F. Supp. 1306, 1309 (E.D. Wis. 1996) ("Because Enk's showing that he can proceed as a next friend is like any plaintiff's burden to show standing, Enk must allege his capacity to sue as a next friend in the complaint."). Nevertheless, the fact that Suri is bringing third-party claims for non-habeas relief on behalf those who were never detained is, as explained *supra*, illustrative of Respondents' point that this case in fact challenges the Government's initiation of removal proceedings.

Even assuming Suri had brought his children's claims for relief as a "next friend," which he did not, Suri does not demonstrate or even allege any injury to his children—who "remain[] the real party in interest"—in such claims, *Whitmore v. Arkansas*, 495 U.S. 149, 163 (1990), from the termination of their SEVIS records. His only alleged injuries are to his own feelings, finances, and school projects, and he does not allege that he suffered any injury from the termination of their SEVIS records. *See* ECF #79-2. He does not allege his children have suffered any direct injuries to their ability to attend school by the termination of their SEVIS records. *Id.* Therefore, even if

Suri had alleged a third-party claim or brought a claim in a representative capacity, he fails to show his children suffered any actual injury from the termination of their SEVIS records. And Suri's children would not have a justiciable claim for relief for the same reasons Suri does not .

**V. Suri Cannot Show Irreparable Harm**

As explained by the U.S. Department of State, on July 3, 2025, Suri's SEVIS record was reinstated *nunc pro tunc* to the date of termination. Pasini Decl. ¶¶ 5-7. The alleged harms Suri speculated about (e.g., "[i]f I am forced to sit idly", "may lose my current opportunity at Georgetown", "I am very worried that a long period of time in which I am unable to work will be very damaging to my career")—even assuming that such are legally cognizable—are even more speculative now that his SEVIS record has been reinstated. To show an entitlement to a preliminary injunction, Suri must show it is "likely" that he can "establish a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Murthy v. Missouri*, 603 U.S. 43, 69 (2024). At this juncture, all Suri alleges is speculation that his speculative harms might possibly be less speculative in the future. That is not enough.[6]

To the extent the Court is disinclined to deny Suri's motion outright, the Government respectfully requests that the Court should instead hold the motion in abeyance unless or until Suri's SEVIS record is re-terminated.

**REQUEST FOR BOND**

In the event the Court issues another preliminary injunction, the Court should require Petitioner to post a security bond in an appropriate amount. Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, "[t]he [C]ourt may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to

[6] Moreover, Suri is subject to section 1182(e) and must return home for two years at the conclusion of his program, which itself limits Suri's ability to pursue any sort of career in the U.S.

pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

## CONCLUSION

For the foregoing reasons, the motion for a preliminary injunction should be denied, or in the alternative, stayed pending further order of the Court.

DATE: July 14, 2025

Respectfully Submitted,

ERIK S. SIEBERT
*United States Attorney*

By: /s/
ELIZABETH SPAVINS
*Assistant U.S. Attorney*
CHRISTIAN COOPER
*Special Assistant U.S. Attorney*
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3785
Fax: (703) 299-3983
Lizzie.Spavins@usdoj.gov
Christian.Cooper@usdoj.gov

BRETT SHUMATE
*Assistant Attorney General*
Civil Division

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court National Security Section

YAMILETH G. DAVILA
*Assistant Director*

*/s/ David J. Byerley*
DAVID J. BYERLEY
*Trial Attorney* (DC Bar #1618599)
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
District Court National Security Section
P.O. Box 868, Benjamin Franklin Station
Washington, D.C. 20044
202-532-4523
David.Byerley@usdoj.gov