UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BADAR KHAN SURI ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-480 (PTG/WBP) |
| ) | |
| DONALD TRUMP, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**THE INTERCEPT'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
TO INTERVENE AND TO LIFT REMOTE ACCESS RESTRICTIONS**

Non-party The Intercept Media, Inc. ("The Intercept"), by counsel, pursuant to Local Civil Rule 7 (E.D. Va. Dec. 1, 2024), submits this memorandum in support of its unopposed motion for leave to intervene for the limited purpose of lifting the remote access restrictions currently in place pursuant to Rule 5.2(c) of the Federal Rules of Civil Procedure.

The Fourth Circuit granted a motion by The Intercept, with Petitioner's consent, and lifted these restrictions during the appellate proceedings in this matter. *See Suri v. Trump*, No. 25-1560, ECF 26 (4th Cir. June 26, 2025). Upon remand from the Fourth Circuit, however, the restrictions remain in place for this Court's electronic file. Notably, Petitioner previously requested that the Court lift the restrictions, except as to one document,[1] "[d]ue to the immense public interest in this case," ECF No. 52, and does not oppose The Intercept's motion. Respondents take no position on The Intercept's motion.

---

[1] Petitioner requested that the restrictions be lifted except as to ECF No. 21-2, "which contains personally identifiable information of third parties." *See* ECF No. 52. Petitioner, by counsel, has indicated he intends to move to seal ECF No. 21-2.

Consistent with the Fourth Circuit's ruling, Petitioner's consent, Respondents' having no position and the law governing the public's presumptive right of access, The Intercept requests that its motion be granted, and that the remote electronic access restrictions be lifted, providing the public ongoing access to both previous and future filings.

I.      **INTRODUCTION & FACTUAL BACKGROUND**

The Intercept is a nonprofit digital news outlet that covers the numerous legal challenges around the country to the federal government's detention and attempted deportation of activists, students, protestors, and others exercising their constitutional rights.[2] This is one such case: the Petitioner alleges "the government appears to be targeting Mr. Suri, a noncitizen, due to his U.S. citizen wife's identity as a Palestinian and her constitutionally protected speech." ECF No. 1, ¶ 1.[3] Indeed, the Court determined that Mr. Suri was likely to prevail on his claim of First Amendment retaliation and ordered his release on these grounds. *Suri v. Trump*, No. 1:25-cv-480 (PTG/WBP), 2025 U.S. Dist. LEXIS 94297, at *2 (E.D. Va. May 14, 2025). The Fourth Circuit, similarly, ruled that granting a stay of this Court's order "would allow the government to immediately re-detain

---

[2]     *See, e.g.*, Natasha Lennard, *Universities Told Students to Leave the Country. ICE Just Said They Didn't Actually Have To*, The Intercept (April 17, 2025), https://theintercept.com/2025/04/17/international-student-visas-deport-dhs-ice/; Jonah Valdez, *In Trump's America, You Can Be Disappeared for Writing an Op-Ed*, The Intercept (Mar. 30, 2025), https://theintercept.com/2025/03/30/tufts-rumeysa-ozturk-ice-immigration-op-ed; Akela Lacy, *Palestinian Student Leader Was Called In for Citizenship Interview — Then Arrested by ICE*, The Intercept (Apr. 14, 2025), https://theintercept.com/2025/04/14/ice-columbia-student-mohsenmahdawi-citizenship-interview; Jonah Valdez, *What Comes Next in Mahmoud Khalil's Fight Against Deportation*, The Intercept (Apr. 12, 2025), https://theintercept.com/2025/04/12/mahmoud-khalil-immigration-hearing-deportation-trump.

[3]     The petition is not electronically accessible on the Court's docket, but was made available to the public by Petitioner's counsel: https://www.acluva.org/app/uploads/2025/04/ecf_1_-_petition_and_complaint.pdf.

Suri, which would further chill speech protected by the First Amendment." *Suri v. Trump*, No. 25-1560, 2025 U.S. App. LEXIS 16172, at *25 (4th Cir. July 1, 2025).

Mr. Suri's case, and cases like his, are matters of profound national importance, because they have fueled a public debate about the scope and legality of the Trump administration's actions regarding non-citizens. In each case, it is vital that the public understand the parties' arguments as well as the evidence upon which courts evaluate them.

This Court prioritizes the public's access to judicial records, as evidenced by its Local Rules. *See generally* Local Civil Rule 5 (E.D. Va. Dec. 1, 2024). Currently, however, remote access to the filings in this case is restricted under Rule 5.2(c) of the Federal Rules of Civil Procedure, which prohibits non-parties from remotely accessing the full electronic record via PACER. Under these restrictions, the public, including members of the news media, may only access the full electronic record by visiting the courthouse in person. The Intercept's journalists cover this case remotely and do not have the capacity to travel to Virginia to cover the proceedings or access court filings. Nor should The Intercept have to spend its limited financial resources to hire a runner to access those records.

On The Intercept's motion, the Fourth Circuit lifted these restrictions[4] in the appellate proceedings in this matter. *See Suri v. Trump*, No. 25-1560, ECF 26 (4th Cir. June 26, 2025) ("Upon consideration of The Intercept Media, Inc.'s unopposed motion to remove remote access restrictions, the court grants the motion.").[5] But remote access remains restricted for this Court's file. Accordingly, The Intercept moves for leave to intervene and respectfully requests that the

---

[4] Rule 25(a)(5) of the Federal Rules of Appellate Procedure incorporates the protections of Rule 5.2(c).

[5] Copies of The Intercept's motion and the Fourth Circuit's Order are attached as Exhibits A and B, respectively.

Court enter an order directing the Clerk of Court to make all filings in this case accessible electronically,[6] except where, pursuant to Local Civil Rule 5, the parties file a motion justifying sealing a given judicial record and the Court grants that motion.

## II. ARGUMENT

### A. *The Intercept's Motion to Intervene Should Be Granted.*

The Fourth Circuit has held that "the press has standing to intervene in actions in which it is not otherwise a party to seek review of a district court's order sealing documents and court records." *Rosenfeld v. Montgomery Cty. Public Schs.*, 25 F. App'x 123, 131 (4th Cir. 2001). *See also Doe v. Pub. Citizen*, 749 F.3d 246, 262 (4th Cir. 2014) (noting that the Fourth Circuit "has previously permitted news organizations to intervene in actions in which they were not otherwise parties to challenge a district court's sealing order"); *Stone v. Univ of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir. 1988); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir. 1988). Indeed, "representatives of the press and general public 'must be given an opportunity to be heard on the question of their exclusion'" when access to judicial records is at stake. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J., concurring)). Therefore, The Intercept's motion to intervene should be granted.[7]

---

[6] In several similar cases, this has been accomplished by directing the Clerk to change the "nature of suit" code in the case to No. 530 ("Habeas Corpus"). *See, e.g.*, *J.A.V. v. Trump*, No. 1:25-cv-00072, ECF No. 55 (S.D. Tex. Apr. 25, 2025); *W.M.M. v. Trump*, No. 1:25-cv-00059, ECF No. 53 (N.D. Tex. Apr. 29, 2025).

[7] It is unclear whether the Court's Order memorializing the parties' Stipulation of Settlement and Order for the Withdrawal of Petitioner's Motion for Preliminary Injunction was a final order in this action. *See* ECF No. 107. Assuming *arguendo* it was, The Intercept still has standing to intervene for the limited purpose of gaining remote access to the Court's electronic file. *See, e.g., Kirby v. Res-Care, Inc.*, 596 F. Supp. 3d 588, 592 (S.D.W. Va. 2022) ("Buzzfeed's intervention will not unduly delay or prejudice adjudication on the merits because the case has been settled.

      B.      *Whether Emanating From the Common Law or the First Amendment, There Is No Countervailing Interest Sufficient to Overcome the Public's Right to Access These Records Remotely.*

Access to judicial records "allows the public to 'participate in and serve as a check upon the judicial process—an essential component in our structure of self-government.'" *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 327 (4th Cir. 2021) (quoting *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982)). *See also Columbus–America Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000) ("Publicity of such records, of course, is necessary in the long run so that the public can judge the product of the courts in a given case."); Doe, 749 F.3d at 266 ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification.") (quoting *Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006)). The public's presumptive right of access derives from two sources: the common law and the First Amendment. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (citing *Stone*, 855 F.2d at 180).

"Regardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Id.* at 576 (quoting *Stone*, 855 F.2d at 182). Nevertheless, the difference between the two sources is potentially significant, as the First Amendment provides greater access to the public than the common law. *See id.* at 575. When the common law right of access attaches, it may be rebutted "if countervailing interests heavily outweigh the public interests in access, and the party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Id.* (cleaned up)

---

Intervention can be appropriate even after entry of a final judgment.") (citing *Rushford*, 846 F.2d at 252).

5

(quoting *Rushford*, 846 F.2d at 253).  When the First Amendment right of access attaches, by contrast, "a district court may restrict access 'only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest.'" *Id.* (quoting *Stone*, 855 F.2d at 180).  Thus, the district court first must determine the source of the right of access with respect to each document, because "only then can it accurately weigh the competing interests at stake." *Id.* at 576 (cleaned up) (quoting *Stone*, 855 F.2d at 181).

The Fourth Circuit utilizes the "experience and logic" test to determine whether a First Amendment right of access applies. *See Schaefer*, 2 F.4th at 326.  Under the experience and logic test, "[t]he First Amendment provides a right of access to a judicial proceeding or record: (1) that 'ha[s] historically been open to the press and general public;' and (2) where 'public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-10 (1986)).  Applying this test, the United States District Court for the District of Columbia found that the First Amendment right of access attaches to habeas proceedings, noting after extensive analysis that "access to habeas proceedings has been historically available" and that access plays a "significant positive role in the functioning" of those proceedings. *In re Guantanamo Bay Detainee Litig.*, 624 F. Supp. 2d 27, 35–38 (D.D.C. 2009). Given this, the First Amendment provides the public, including The Intercept, a right of access that may be restricted "only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Doe*, 749 F.3d at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)).

Ultimately, regardless of whether the public's presumptive right of access in this instance emanates from the First Amendment or the common law, there is no countervailing interest, much less a compelling one, that justifies the wholesale denial of remote electronic access to judicial

records in this proceeding, and even if there were, the blanket denial of remote electronic access is not narrowly tailored to serve that interest. The Fourth Circuit previously lifted the restrictions in the appellate proceedings in this matter. Furthermore, it is apparent from the language of Rule 5.2(c) that the restrictions are intended to help protect an individual party's privacy interest in his/her immigration information, but in this instance, the individual party—Petitioner—has affirmatively requested that the public receive remote electronic access to the Court's file. Thus, even if there was some remaining interest to be served under these circumstances, blanket application of Rule 5.2(c) to all party filings and supporting exhibits, including those the Court relied on in ruling on the petition, would almost certainly be overbroad, frustrating the public's right to understand what has happened in this case, in which the public has immense interest.

### III. CONCLUSION

For the foregoing reasons, The Intercept respectfully requests that the Court grant its unopposed motion, direct the Clerk of Court to make all previous and future filings in this case electronically accessible to the public remotely (with the exception of ECF No. 21-2, which Petitioner says "contains personally identifiable information of third parties" that Petitioner has indicated he intends to move to seal), and grant The Intercept any additional relief the Court deems fair and just.

Dated: September 10, 2025.   Respectfully submitted,

**The Intercept Media, Inc.**

By counsel:

/s/ *David B. Lacy*
David B. Lacy (VSB No. 71177)
dlacy@cblaw.com
Harley J. McClellan (VSB No. 98295)

7

               hmcclellan@cblaw.com
               CHRISTIAN & BARTON, L.L.P.
               901 East Cary Street, Suite 1800
               Richmond, Virginia 23219
               Tel.: (804) 697-4100
               Fax: (804) 697-6112

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.


/s/ *David B. Lacy*
David B. Lacy (VSB No. 71177)
dlacy@cblaw.com
CHRISTIAN & BARTON, L.L.P.
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Tel.:    (804) 697-4100
Fax:    (804) 697-6112

*Counsel for The Intercept Media, Inc.*

#4904-9918-1671